IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| BRANDY BISHOP and NICHOLAS BISHOP, individually and as parents and legal guardians of M. R. B., an infant, and on behalf of all others similarly situated, | ) ) ) ) ) ) | Civil Action No. 6:10-cv-01470-JMC  (Judge J. Michelle Childs) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| THE PROCTER & GAMBLE COMPANY; THE PROCTER & GAMBLE PAPER PRODUCTS COMPANY, and THE PROCTER & GAMBLE DISTRIBUTING LLC, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS THE PROCTER & GAMBLE COMPANY, THE PROCTER & GAMBLE PAPER PRODUCTS COMPANY AND THE PROCTER & GAMBLE DISTRIBUTING LLC TO STAY THE CASE OR, IN THE ALTERNATIVE, TO DISMISS THE CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY ...................................................................... 1

II.     THE PRESENT ACTION SHOULD BE STAYED PENDING A DECISION ON
        THE DRY MAX MOTION TO DISMISS .......................................................... 2

III.    IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS PLAINTIFFS'
        CLASS ACTION COMPLAINT ......................................................................... 5

        A.      Summary of Defects in Plaintiffs' Complaint ......................................... 5

        B.      Plaintiffs' Claims are Defective Because of Speculation and a Failure to
                Plead Causation ...................................................................................... 8

                1.      Plaintiffs Fail to Allege Sufficient Facts (More Than Conclusory
                        Allegations of "Correlation") to Raise a Right to Relief Above the
                        Speculative Level ........................................................................ 9

                2.      Plaintiffs Must Allege Facts Showing Causation and Do More
                        Than Allege Conduct that is Merely Consistent with Actionable
                        Conduct ...................................................................................... 12

        C.      Even If Sufficient Facts Are Alleged, Each of Plaintiffs' Claims Remain
                Defective For Several Separate And Independent Reasons ................... 14

                1.      Plaintiffs' Uniform Commercial Code Claims Fail Because
                        Plaintiffs Did Not Properly Plead a Sale .................................. 14

                2.      Plaintiffs' UTPA Claim Fails Because the Advertising Claims are
                        Unactionable Statements ........................................................... 15

                3.      Plaintiffs' UTPA Claim Fails Because the UTPA Expressly
                        Prohibits Class Actions Brought on Behalf of Private Citizens ........ 15

                4.      All Non-Injury Negligence and Strict Liability Claims Must Fail ........ 16

                5.      Plaintiffs' Unjust Enrichment Claim Must Fail Because Plaintiffs
                        Have Not Alleged Sufficient Facts to Show that Procter & Gamble
                        Was Unjustly Enriched at Plaintiffs' Expense .......................... 16

                6.      All Claims Brought on Behalf of Non-South Carolina Residents
                        Fail Because Plaintiffs Do Not Have Standing to Bring Class
                        Claims Under the Laws of Other States .................................. 17

IV.     CONCLUSION ................................................................................................ 18

I.            **INTRODUCTION AND SUMMARY**

Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company and The Procter & Gamble Distributing LLC (collectively "Procter & Gamble") move this Court for an Order staying all further proceedings in this case until the United States District Court for the Southern District of Ohio, Western Division (Cincinnati) ("Southern District of Ohio") rules on a pending Motion of Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company and The Procter & Gamble Distributing LLC to Dismiss the Consolidated Class Action Complaint ("Dry Max Motion to Dismiss"), In re Dry Max Pampers Litigation, No. 1:10-cv-00301 [Doc No. 40].[1]  **Plaintiffs' counsel does not oppose this motion.**  The opportunity to avoid potentially duplicative and unnecessary hearings and efficiently decide this case justifies awaiting the decision on the Dry Max Motion to Dismiss from the Southern District of Ohio before proceeding further in this matter.

In the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6), Procter & Gamble moves to dismiss the Class Action Complaint ("Complaint") [Doc. No. 1] in its entirety. Specifically, Procter & Gamble moves to dismiss each of the following six claims for relief asserted in Plaintiffs Brandy Bishop's and Nicholas Bishop's ("Plaintiffs") Complaint.  Plaintiffs filed their Complaint on June 7, 2010, asserting six claims for relief against Procter & Gamble on behalf of "all users" of Pampers brand diapers containing Dry Max, including (1) breach of implied warranty of merchantability, under South Carolina Uniform Commercial Code, S.C. Code Ann. § 36-2-314; (2) breach of the implied warranty of fitness for a particular purpose under South Carolina Commercial Code, S.C. Code Ann. § 36-2-315; (3) unfair and deceptive

---

[1] Dry Max Motion to Dismiss is attached as Exhibit A.

trade practices, under South Carolina Unfair Trade Practices Act ("UTPA"), S.C. Code Ann.

§ 39-5-10; (4) unjust enrichment; (5) negligence; and (6) strict liability.  Complaint ¶¶ 70, 82-

135.  Each of Plaintiffs' claims are fatally defective and must be dismissed.


II.        <u>**THE PRESENT ACTION SHOULD BE STAYED PENDING A DECISION**</u>
           <u>**ON THE DRY MAX MOTION TO DISMISS**</u>

          The parties are in agreement that the Court should stay this matter at least until a

resolution of the Dry Max Motion to Dismiss.  Several virtually identical class action lawsuits

are consolidated in the Southern District of Ohio, styled as <u>In re Dry Max Pampers Litigation</u>,

Case No. 1:10-cv-00301 ("<u>In Re Dry Max Pampers Litigation</u>").[2]  The <u>In Re Dry Max Pampers</u>

<u>Litigation</u> is proceeding and the parties are moving forward in the consolidated cases.  The Court

in the Southern District of Ohio has held two status conferences with the parties.  July 20, 2010

Preliminary Calendar Order (attached as Exhibit G to Motion to Transfer Venue); October 28,

2010 Notation Order.  The plaintiffs in the <u>In Re Dry Max Pampers Litigation</u> have filed a

Consolidated Class Action Complaint, and Procter & Gamble has filed a motion seeking to

---

[2] As shown in the Defendants The Procter & Gamble Company, The Procter & Gamble Paper
Products Company and The Procter & Gamble Distributing LLC's Motion to Transfer Venue
("Motion to Transfer Venue") [Doc. No. 7], this Court should transfer this case to the Southern
District of Ohio where ten class actions have already been consolidated, remain pending and are
proceeding.  On June 16, 2010, the Southern District of Ohio consolidated each of the above
pending actions "and any other action arising out of the same operative facts now pending or
hereafter filed in, removed to, or transferred to this district." June 16, 2010 Order on Plaintiffs'
Motion for Consolidation and Appointment as Interim Lead Counsel, ¶ 2 (attached as Exhibit E
to Motion to Transfer Venue).  This case is premised on the same allegedly improper conduct as
all of the consolidated cases, asserts virtually identical allegations, and seeks to represent a class
that is encompassed in the class action lawsuits pending in the Southern District of Ohio.
Furthermore, transfer of this case to the Southern District of Ohio is proper because it could have
been brought there pursuant to 28 U.S.C. § 1391(a), as the principal place of business of Procter
& Gamble is in Cincinnati, Ohio.

dismiss the Consolidated Class Action Complaint, raising similar arguments as asserted in this motion below.[3]  The Dry Max Motion to Dismiss remains pending before the Southern District of Ohio.[4]

This Court possesses the authority to stay a matter in furtherance of judicial economy.  Landis v. North Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 166 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.");  PBM Nutritionals, LLC v. Dornoch Ltd., 667 F. Supp. 2d 621, 631 (E.D. VA 2009) ("A motion to stay. . . is a power inherent in the courts 'under their general equity powers and in the efficient management of their dockets.'") (citation omitted).  "Courts may consider

---

[3] Consolidated Class Action Complaint (attached as Exhibit 1 to the Supplemental Memorandum in Support of Motion to Transfer Venue [Doc. No. 20] the; Dry Max Motion to Dismiss (attached as Exhibit A).  Procter & Gamble has also filed a motion seeking to strike the class allegations in the Consolidated Class Action Complaint, and the plaintiffs are in the process of responding to both motions.  Motion of Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company And The Procter & Gamble Distributing LLC To Strike Plaintiffs' Class Allegations, In re Dry Max Pampers Litigation, No. 1:10-cv-00301 [Doc No. 39] attached as Exhibit B.

[4] The Court and the parties in the In Re Dry Max Pampers Litigation are resolving issues related to the scope of discovery and the scheduling of a motion for class certification and trial, if necessary.  The parties filed a Joint Rule 26(f) Report on September 22, 2010.  Joint Rule 26(f) Report, In re Dry Max Pampers Litigation, No. 1:10-cv-00301 [Doc No. 27] attached as Exhibit C.  The parties have fully briefed a motion related to the scope of discovery.  Motion of Defendants The Procter & Gamble Company, Procter & Gamble Paper Products Company, and Procter & Gamble Distributing LLC to Phase and Sequence Discovery, In re Dry Max Pampers Litigation, No. 1:10-cv-00301 [Doc No. 28] (attached as Exhibit D), Memorandum in Opposition to Defendants' Motion to Phase and Sequence Discovery, In re Dry Max Pampers Litigation, No. 1:10-cv-00301 [Doc. No. 33] (attached as Exhibit E) and Reply Memorandum of Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company, and The Procter & Gamble Distributing LLC to Phase and Sequence Discovery, In re Dry Max Pampers Litigation, No. 1:10-cv-00301 [Doc. No. 41] (attached as Exhibit F).  On October 26, 2010, the Court held oral argument on the motion and has taken the Joint Rule 26(f) Report and motion under advisement to issue a decision.  October 27, 2010 Minute Entry, In re Dry Max Pampers Litigation, No. 1:10-cv-00301.

factors relevant to the stay, including whether all necessary parties are present in each action, convenience and judicial economy and comity."[5] Id. (citing Int'l Nickel Co. v. Martin J. Barry, Inc., 204 F.2d 583, 585-586 (4th Cir. 1953)). Convenience, judicial economy and comity dictate stay when there is a parallel and overlapping action. Chartener v. Provident Mutual Life Ins. Co., No. 02-8045, 2003 U.S. Dist. LEXIS 19500, at *7-10 (E.D. Pa. Oct. 23, 2003) (staying activity in a class action until after resolution of a pending overlapping suit involving the same defendants, some of the same claims and a class that included the plaintiff).[6] This Court should stay this matter at least until a decision is reached by the Southern District of Ohio on the virtually identical Dry Max Motion to Dismiss.

      Here, considerations of judicial economy and comity warrant a stay of activity until a decision is reached by the Southern District of Ohio on the Dry Max Motion to Dismiss. This case and In re Dry Max Pampers Litigation contain overlapping claims and classes. Procter & Gamble's Motion to Transfer, pp. 5-6 [Doc No. 7].[7] Allowing this case to proceed could result in decisions and a judgment that are inconsistent with the decisions and any judgment in In re Dry Max Pampers Litigation, the first-filed case, and will result in the duplication of private efforts and a waste of judicial resources. The opportunity to avoid potentially duplicative and

---

[5] In PBM Nutritionals, the court stayed action in the case before it pending resolution of a duplicative action in New York. Id. at 634. The court held that "concerns about judicial economy and comity caution against proceeding in this Court when the New York Court already has determined to exercise jurisdiction. Because of the strong policy against duplicative litigation in two federal courts, . . . this action should be stayed pending resolution of the New York Action." Id.

[6] This case and all other unreported cases cited in this Motion are included in Appendix I.

[7] Procter & Gamble, alternatively, requests that in the interest of judicial economy and the preservation of resources, this Court stay further activity in this case until after the ruling on the Motion to Transfer.

4

unnecessary hearings and efficiently decide this case justifies awaiting the decision on the Dry Max Motion to Dismiss.

III.  **IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

    A.  <u>Summary of Defects in Plaintiffs' Complaint</u>

In the alternative, pursuant to Fed. R. Civ. P. 12(b)(6), Procter & Gamble moves to dismiss the Complaint in its entirety. Plaintiffs assert claims individually and on behalf of all users of Pampers diapers with Dry Max. Complaint, ¶ 70. At the threshold, Plaintiffs' claims should be dismissed because they cannot meet the Supreme Court's standards for plausibility. Further, separately, the various causes of action or theories of recovery fail for a variety of reasons under state law.

All of Plaintiffs' claims are speculative and fail to meet the threshold plausibility requirement expressed in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007) and <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937 (2009).[8] Each claim asserted by Plaintiffs has causation as one of its elements. <u>Dema v. Tenet Physician Services-Hilton Head, Inc.</u>, 383 S.C. 115, 124, 678 S.E.2d 430, 434-435 (S.C. 2009) (dismissing unjust enrichment complaint where plaintiffs could not show that they were injured as a result of the allegedly unjust actions of

---

[8] Assertion of speculative theories of recovery against Procter & Gamble are routinely dismissed by courts. <u>E.g.</u>, <u>Mitchell v. Procter & Gamble</u>, No. 2:09-CV-426, 2010 U.S. Dist. LEXIS 17956 (S.D. Ohio Mar. 1, 2010) (dismissing plaintiffs claims for, among other reasons, failing to meet <u>Twombly</u> and <u>Iqbal</u> requirements related to plaintiffs' theories about Prilosec OTC increasing the risk of food borne illness); <u>Loreto v. The Procter & Gamble Co.</u>, No. 1:09-cv-815, 2010 U.S. Dist. LEXIS 91699 (S.D. Ohio Sept. 3, 2010) (granting defendant's motion to dismiss plaintiffs' class action complaint); <u>Koronthaly v. L'Oreal USA, Inc.</u>, No. 08-4625, 2010 U.S. App. LEXIS 6383 (3d Cir. Mar. 26, 2010) (affirming the district court's granting of Procter & Gamble's motion to dismiss the class action complaint).

plaintiff); <u>Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc.</u>, 379 S.C. 181, 194, 666 S.E. 2d 247, 254 (S.C. 2008) ("To recover under the [South Carolina Unfair Trade Practices Act], a plaintiff must prove a violation of the Act, proximate cause, and damages."); <u>Livingston v. Noland Corp.</u>, 293 S.C. 521, 362 S.E.2d 16 (S.C. 1987) (holding that, under the elements of strict liability cause of action, plaintiffs must prove that the product was not reasonably fit or safe for its intended use and the defect was the direct and efficient cause of the plaintiff's injury); <u>Young v. Tide Craft, Inc.</u>, 270 S.C. 453, 462, 242 S.E.2d 671, 675 (S.C. 1978) (elements of negligence include proximate cause); <u>Rife v. Hitachi Constr. Mach. Co., Ltd.</u>, 363 S.C. 209, 609 S.E.2d 565, 569 (S.C. Ct. App. 2005) (holding that under all products liability theories, including breach of implied warranty claims, a plaintiff must prove proximate cause), <u>cert.</u> <u>denied</u>, 2006 S.C. LEXIS 311 (S.C. July 20, 2006).

   Plaintiffs' Complaint fails to allege facts sufficient to support the theory that the Pampers with Dry Max product was the <u>cause</u> of any alleged harm or injury (including diaper rash) suffered by Plaintiffs or Plaintiffs' child.  While Plaintiffs cite numerous articles (many of which recognize a multitude of causes of diaper rash), Plaintiffs ignore the various causes of diaper rash and fail to isolate the diaper (Pampers with Dry Max) as the cause of any rash in Plaintiffs' child.  Plaintiffs' Complaint, weighted down by speculative theories, is not enough to meet the plausibility pleading requirements of <u>Twombly</u> and <u>Iqbal</u>.

   In addition, each of Plaintiffs' claims is barred for separate reasons.  Plaintiffs' Uniform Commercial Code claims are defective because Plaintiffs fail to properly plead a sale. Plaintiffs' South Carolina Unfair Trade Practices Act ("SCUTPA") claims fail because Plaintiffs do not point to any representations that amount to more than inactionable sales talk.  To the extent that Plaintiffs seek to bring SCUTPA claims on behalf of a class, Plaintiffs' class claims

fail because SCUTPA prohibits class actions initiated by consumers. Plaintiffs' non-injury strict liability and negligence claims fail because the economic loss rule bars recover of purely economic damages under those causes of action. Finally, Plaintiffs' unjust enrichment claims fail because Plaintiffs cannot prove that Procter & Gamble's retention of payment was unjust.

Further, to the extent that Plaintiffs seek to bring this action on behalf of a national class and the laws of states other than the laws of South Carolina apply, Plaintiffs' claims must fail. The Complaint filed by Plaintiffs is modeled after (and virtually identical to) the class action complaints that were previously filed against Procter & Gamble in the Southern District of Ohio and consolidated into a single action, styled as In re Dry Max Pampers Litigation, No. 1:10-cv-00301 (S.D. Ohio).[9] On August 23, 2010, a Consolidated Class Action Complaint was filed in In re Dry Max Pampers Litigation that includes all of the claims asserted

---

[9] The following ten parallel cases have been consolidated into In re Dry Max Litigation: (1) Clark v. Procter & Gamble, No. 10-301 (S.D. Ohio) (filed May 11, 2010); (2) Maloon v. Procter & Gamble, No. 1:10-cv-00307 (S.D. Ohio) (filed May 13, 2010), (3) York v. Procter & Gamble, No. 1:10-cv-00304 (S.D. Ohio) (filed May 13, 2010), (4) Robins v. Procter & Gamble, 1:10-cv-00332 (S.D. Ohio) (filed May 23, 2010), (5) Berman v. Procter & Gamble, 2:10-cv-12179 (E.D. Mich.) (filed June 2, 2010), (6) D'Andrea v. Procter & Gamble, No. 2:10-cv-02562 (E.D.N.Y.) (filed June 4, 2010), (7) Tatum v. Procter & Gamble, No. 2:10-cv-03223 (D.N.J.) (filed June 23, 2010), (8) Tepper v. Procter & Gamble, No. 1:10-cv-00420 (S.D. Ohio) (filed June 25, 2010); (9) Rosenbaum v. Procter & Gamble, No. 1:10-cv-00563 (S.D. Ohio) (filed August 20, 2010); and (10) Lawson v. Procter & Gamble, 1:10-cv-0074 (S.D. Ohio) (filed Oct. 22, 2010). Of those ten cases, three cases, Berman, D'Andrea and Tatum were transferred to the Southern District of Ohio from other federal district courts. The present action is the only related case that has not been transferred to the Southern District of Ohio; however, the Complaint in the present action is a virtual copy of the Clark complaint, the initial complaint filed against Procter & Gamble regarding Pampers with Dry Max, which is a part of the consolidated action pending in the Southern District of Ohio. A side-by-side comparison of the two complaints demonstrates that almost all of the allegations in the Complaint were copied and pasted verbatim from the Clark complaint.

in this action, including a nationwide class, various state classes, and a South Carolina class.  On

October 20, 2010, Procter & Gamble filed its Motion to Dismiss the Class Action Complaint.[10]

> **B.     Plaintiffs' Claims are Defective Because of Speculation and a Failure to Plead Causation**

Plaintiffs' claims fail to meet the plausibility pleading requirements of <u>Twombly</u>

and <u>Iqbal</u>.  A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint

via a two-step process.  The first step is to identify any conclusory allegations and assume only

well-pleaded factual allegations as true.  <u>Ashcroft v. Iqbal</u>, __, U.S. __, 129 S. Ct. 1937, 1950

(2009).[11]  After assuming the veracity of all well-pleaded factual allegations, the second step is to

determine whether plaintiffs pled "a claim to relief that is plausible on its face."  <u>Id</u>. at 1940

(citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556, 570, 127 S. Ct. 1955, 1965, 1974 (2007)).

A claim is facially plausible only when plaintiffs "plead[] factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id</u>. at

1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. at 1965).  Plaintiffs' Complaint is littered with

impermissible conclusory allegations, and Plaintiffs fail to meet the second step – the plausibility

threshold required in both <u>Twombly</u> and <u>Iqbal</u> because they cannot "raise a right to relief above

the speculative level," particularly on the element of causation.

---

[10] Dry Max Motion to Dismiss attached as Exhibit A.  Procter & Gamble incorporates and asserts the applicable arguments contained in the Dry Max Motion to Dismiss into the present Motion. In addition, prior to filing the Motion to Dismiss, Procter & Gamble filed a Motion to Strike Plaintiffs' Class Allegations ("Motion to Strike").  Given the multiple differences in state laws (to the extent that Plaintiffs seek to bring this action on behalf of a national class), the individual issues associated with causation and the conclusions of the CPSC and Health Canada, it would be impossible to manage this matter as a class action.

[11] <u>Francis v. Giacomelli</u>, 588 F.3d 186,194,197 (4th Cir 2009) (affirming dismissal of claims where plaintiffs assertions of wrongdoing were conclusory and the facts relied on actually showed the propriety of defendant's conduct).

        1.       Plaintiffs Fail to Allege Sufficient Facts (More Than Conclusory Allegations of "Correlation") to Raise a Right to Relief Above the Speculative Level

After both <u>Twombly</u> and <u>Iqbal</u>, Plaintiff <u>must</u> plead enough "factual allegations . . . to raise a right to relief above the speculative level" to survive a motion to dismiss under Rule 12(b)(6).  <u>Ass'n of Cleveland Fire Fighters v. City of Cleveland</u>, 502 F.3d 545, 548 (6th Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1965).  Plaintiffs must state sufficient facts to state a claim "that is plausible on its face."  <u>Iqbal</u>, 129 S. Ct. at 1949.[12]  Facial plausibility is established if the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Nemet Chevrolet Ltd. v. Consumeraffairs.com</u>, 591 F.3d 250, 256 (4th Cir. 2009) (explaining that the complaint must contain sufficient facts to infer more than a mere possibility of misconduct).  Plaintiffs fail to allege sufficient non-conclusory facts to raise a right to relief above the speculative level.

Plaintiffs fail to allege facts sufficient to support the conclusory assertion that the Pampers with Dry Max product was the <u>cause</u> of any alleged harm or injury (including diaper rash) suffered by Plaintiffs or Plaintiffs' children.  While Plaintiffs cite numerous articles about diaper rash in their Complaint (many of which recognize the numerous different causes of diaper rash) (Complaint, nn. 2 and 5), Plaintiffs ignore the various causes of diaper rash cited in those articles and assert theories (without sufficient factual support) that the Pampers with Dry Max diaper must be the cause of the rashes experienced by Plaintiffs' children.

---

[12] In promulgating the "plausibility" standard, the Supreme Court was driven by pragmatic concerns involving (1) the need to stem what it deemed baseless litigation (like the litigation here) and (2) the high costs of pretrial discovery (as Plaintiffs seek in this case).  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556-67, 127 S. Ct. 1955, 1965-72 (2007).

For example, Plaintiffs cite and selectively quote from articles that recognize that diaper rash is "[t]he most common form of ICD (irritant contact dermatitis) in early infancy." Id. n.2 (Paolo Pigatto et al., Contact Dermatitis in Children, 36 Italian J. of Pediatrics 2 (2010), available at http://www.ijponline.net/content/36/1/2 (last visited on Oct. 12, 2010) (attached as Exhibit G). The Pigatto article identifies many "[f]actors favoring [the] onset [of diaper rash include] the dampness and maceration of the area covered by the [diaper], prolonged contact with organic liquids and the secondary development of ammoniac by fecal bacterial flora, the development of candida albicans and inflammatory bacteria, the deodorants and preservatives contained in nappies, the creams and oils applied many times a day, and mechanical stimuli caused by physically cleaning and washing the newborn." Id.[13]

Plaintiffs ignore that diaper rash is a common problem and instead assert (without sufficient factual support and on information and belief) that any rash experienced by Plaintiffs' child must have been caused by the Pampers with Dry Max diaper. Complaint, ¶ 9.[14] Plaintiffs

---

[13] Similarly, Plaintiffs' articles recognize that "[o]ther factors such as ammonia generated by the bacteria breakdown of urea, skin-skin and skin-diaper frictions, changes in skin pH, faeval protease and lipase enzymes activated in the pH range of 6-7, increases in $CO_2$ caused by heat and moisture and heat increase in the diaper area can also create irritations on the human skin." Id. n.4 (Necla Yaman et al., Alternative Test Methods for Assessing Mechanical Properties of Disposable Diapers, 15 Fibres & Textiles E. Eur. 80 (2007) (attached as Exhibit H)). A child's diet is also a factor that contributes to diaper dermatitis because it affects the characteristics of urine and feces. Id. n.2 (Paolo Pigatto et al., Contact Dermatitis in Children, 36 Italian J. of Pediatrics 2 (2010), available at http://www.ijponline.net/content/36/1/2 (last visited on Oct. 12, 2010) (attached as Exhibit G). In addition, the frequency of diaper changes is a separate factor that affects skin irritation. Id. Plaintiffs ignore these factors in their Complaint.

[14] The commonness of diaper rash was corroborated by Procter & Gamble (Complaint, ¶ 65, n.65). As explained by Procter & Gamble, approximately 2.5 million children experience some form of diaper rash every day, and 10% of all diaper rash is severe. Id. The severity in some 250,000 children exists regardless of the diaper and is wholly unexplained by Plaintiffs, whose child appears to be representative of severe diaper rash.

allege little or no support for their theories that the rashes must be caused by the Pampers with Dry Max diaper.[15]

By ignoring all of the factors that could cause the common problem of diaper rash, Plaintiffs fail to allege facts sufficient to raise a right to relief above the level of speculation.  For example, Plaintiffs' allegation that "the use of Pampers Dry Max is directly correlated with" certain alleged skin conditions (Complaint, ¶ 9) amounts to no more than a theory about a possible correlation between the use of Pampers with Dry Max and the alleged healthcare injuries; however, Plaintiffs must plead facts relating to actual causation, not correlation, for each of their claims.  Norris v. Baxter Healthcare Corp., 397 F.3d 878, 885 (10th Cir. 2005) ("[C]orrelation does not equal causation.").

Mere theories are simply not "enough to raise a right to relief above the speculative level."  Twombly 550 U.S. at 555, 127 S. Ct. at 1965 (internal citations omitted).  The essential point remains – Plaintiffs must allege facts to show that the Pampers with Dry Max diaper was the cause of any alleged harm or injury.  Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009) (affirming dismissal of plaintiff's complaint and observing plaintiff's contentions that certain facts "may exist," and holding that "mere speculation is insufficient; it was [plaintiff's] burden to allege those facts, if they indeed exist, in the first instance"); Monroe v. Baxter Healthcare Corp. (In re Heparin), No. 3:09HC60137, 2010 U.S. Dist. LEXIS 11297 (N.D. Ohio Feb. 9, 2010) (granting defendant's motion to dismiss where plaintiff failed to plead facts sufficiently relating to proximate causation); Mincey v. World Sav. Bank, 614 F. Supp. 2d

---

[15] Relying entirely on information and belief, Plaintiffs hypothesize that the Pampers with Dry Max caused rash with mere theories.  Id. ¶ 9.  More specifically, Plaintiffs attempt to bootstrap general statements about infant skin to an overview of the diaper design and information regarding raw, unprocessed and undiluted forms of potential ingredients [forms of the ingredients that plaintiffs have not asserted were used in the product]. ¶¶ 56-66.

610, 623 (D.S.C. 2008) (Duffy, J.) (holding that, although plaintiffs alleged numerous theories, there were no allegations in the complaint to support those theories and dismissing plaintiffs' claim). There are simply no facts (only speculative theories) alleged in Plaintiffs' Complaint that would support the allegations that any causal relationship exists between the Pampers with Dry Max product and the diaper rash allegedly suffered by Plaintiffs. Thus, Plaintiffs have failed to state a claim (beyond a speculative level) upon which relief can be granted.

> 2. Plaintiffs Must Allege Facts Showing Causation and Do More Than Allege Conduct that is Merely Consistent with Actionable Conduct

Separately, Plaintiffs fail to provide this Court with enough "factual content, [which would] allow[] [this C]ourt to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, [the complaint] stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted). Id. (citing Twombly) (internal citations omitted). Plaintiffs assert that one day, after their child had been wearing Pampers with Dry Max for three weeks, the child suddenly developed a rash. Complaint, ¶ 9. Plaintiffs do not attempt to explain why their child was able to wear the diapers for three weeks with no problems or why the sudden rash was anything other than diaper rash, a common experience in the life of an infant.[16] Plaintiffs do not discuss any testing or conclusive diagnosis. Plaintiffs cannot and do not even assert that the rash completely cleared with the switch of diaper brands. Id. Rather, Plaintiffs rely on a series of

---

[16] The CPSC recognizes "Most babies exhibit diaper rash at least once in their lifetime." CPSC website: http://www.cpsc.gov/CPSCPUB/PREREL/prhtml10/10331.html (last visited Oct. 12, 2010) (attached as Exhibit I). Given that Pampers is one of the leading diaper products in the U.S. and the world (Complaint, ¶ 21) and the commonness of diaper rash, it is not surprising that many babies experience diaper rash while wearing a Pampers Dry Max product.

coincidences coupled with speculative theories. Plaintiffs fail to present more than allegations that are "merely consistent" with actionable conduct. In other words, while allegations about suffering the alleged rash after wearing the Pampers with Dry Max product may be "consistent" with Plaintiffs' theory of liability, those allegations, without more, do not plausibly suggest any liability. However, in the present case, the allegations are not even consistent with liability.

Plaintiffs' reliance on the CPSC and Health Canada investigations to support their speculative theories about Pampers with Dry Max is misplaced. Complaint, ¶¶ 67-69. Both the CPSC and Health Canada investigations found no link between the rashes and the Pampers with Dry Max diaper. The CPSC stated that:

> "To date, the review has not identified any specific cause linking Dry Max diapers to diaper rash.
>
>                 * * *
>
> CPSC staff reviewed clinical and toxicological data found in published, peer-reviewed medical literature. CPSC also critically reviewed data submitted by Procter & Gamble (P&G) and the results of a human cumulative irritation patch study conducted by P&G in May 2010. Further, chemistry, toxicology and pediatric medicine information provided by Health Canada was reviewed by CPSC."[17]

---

[17] "No Specific Cause Found Yet Linking Dry Max Diapers to Diaper Rash," CPSC website: http://www.cpsc.gov/ CPSCPUB/PREREL/ prhtml10/10331.html (last visited Oct. 12, 2010) (attached as Exhibit I).

Health Canada reached the same conclusion.[18]

Plaintiffs fail to allege facts sufficient to support the apparent theory that any rash was in fact caused by wearing the Pampers with Dry Max product, and neither investigation from the CPSC nor Health Canada supports Plaintiffs' speculative theories. Plaintiffs' Complaint fails to allege conduct that is more than "merely consistent" with actionable conduct and "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 557, 127 S. Ct. at 1966). Therefore, all of Plaintiffs claims should be dismissed.

        C.     Even If Sufficient Facts Are Alleged, Each of Plaintiffs' Claims Remain Defective For Several Separate And Independent Reasons

             1.     Plaintiffs' Uniform Commercial Code Claims Fail Because Plaintiffs Did Not Properly Plead a Sale

Plaintiffs have failed to properly plead a sale. To bring a claim for breach of express or implied warranty, Plaintiffs must allege a sale. Henderson v. Gould, 288 S.C. 261, 268-269, 341 S.E.2d 806, 811 (S.C. Ct. App. 1986). Plaintiffs allege they were initially given diapers by the hospital. Complaint, ¶ 9. Plaintiffs then state that they either purchased or were given additional Dry Max diapers. Id. The Complaint does not affirmatively allege that Plaintiffs ever bought any diapers. As pled, Plaintiffs may or may not have purchased Dry Max diapers. Even assuming that Plaintiffs did purchase Dry Max diapers, Plaintiffs do not specify that they purchased the pack(s) of diapers that were used at the time that the rash developed. Because Plaintiffs have failed to allege a sale of the particular Dry Max diapers that were

---

[18] "Health Canada, US Consumer Product Safety Commission Find No Link Between Pampers Dry Max Diapers and Severe Diaper Rash," Health Canada website: http://www.hc-sc.gc.ca/ahc-asc/media/ftr-ati/_2010/2010_149-eng.php (last visited Oct. 12, 2010) (attached as Exhibit J).

allegedly unfit for their ordinary use, Plaintiffs cannot assert any claims under the Uniform

Commercial Code.

> 2.    Plaintiffs' SCUTPA Claim Fails Because the Advertising Claims
> are Unactionable Statements

Plaintiffs SCUTPA claim also fails because the general corporate advertising

claims made by Procter & Gamble are "permitted by law and on their face were not unfair trade

practices." Fields v. Melrose Ltd. P'ship, 312 S.C. 102, 106 439 S.E.2d 283, 285 (S.C. Ct. App.

1993); Accord: Clarkson v. Orkin Exterminating Co., 761 F.2d 189, 191 (4th Cir. 1985).

Plaintiffs do not identify actionable claims made by Pampers which were allegedly false.

Plaintiffs point to general corporate statements of Procter & Gamble as a whole that discuss its

general statement of values and policies such as "Wraps Baby in All-Around Softness."[19]

Complaint, ¶¶ 42, 43.  Plaintiffs are so desperate to find statements that allege misrepresentations

that they imply that the use of Elmo on a diaper is a misrepresentation regarding safety.

Complaint, ¶ 39. The allegations about Procter & Gamble's advertising in the Complaint are not

unfair trade practices as a matter or law, and Plaintiffs' UTPA claim should be dismissed.

> 3.    Plaintiffs' SCUTPA Claim Fails Because the SCUTPA Expressly
> Prohibits Class Actions Brought on Behalf of Private Citizens

Plaintiffs' class claims under SCUTPA also fail.  SCUTPA expressly prohibits

actions by private citizens on behalf of a class. S.C. Code Ann. § 39-5-140 ("Any person who

suffers any ascertainable loss. . . may bring an action individually, **but not in a representative**

**capacity**, to recover damages.") (emphasis added).  Dema v. Tenet Physician Services-Hilton

Head, Inc., 678 SE.2d 430, 433, 434, 383 S.C. 115, 120, 123 (S.C. 2009) (dismissing SCUTPA

---

[19] Plaintiffs also discuss dryness advertisements, but nowhere in the Complaint do Plaintiffs
make any claims about the diapers' performance in terms of dryness or leakage.  Complaint, ¶ 28.

claims brought on behalf of a class and holding that SCUTPA prohibits a plaintiff from bringing suit in a representative capacity) (citing <u>Gunnells v. Healthplan Servs., Inc.</u>, 348 F.3d 417 (4th Cir. 2003) (impliedly affirming the district court's refusal to certify a UTPA suit as a class action pursuant to § 39-5-140)), <u>cert</u>. <u>denied</u>, 542 U.S. 915, 124 S. Ct. 2837 (2004).  Thus, the UTPA class claims should be dismissed.

    4.    <u>All Non-Injury Negligence and Strict Liability Claims Must Fail</u>

The negligence and strict liability claims of all class members who cannot assert that they or their children suffered a personal injury or damage to any property other than the diapers themselves must be dismissed.  The economic loss doctrine precludes the strict liability and negligence claims of class members whose children did not sustain any physical injury. <u>Sapp v. Ford Motor Co.</u>, 386 S.C. 143, 147, 687 S.E.2d 47, 49 (S.C. 2009) (affirming trial court grant of summary judgment based on the economic loss rule, overturning a case that previously recognized an extension of exceptions to the economic loss doctrine and holding that "where a product damages only itself, tort law provides no remedy.").  Accordingly, the claims of all class members that are unrelated to a personal injury or damage to property other than the diapers themselves must be dismissed.

    5.    Plaintiffs' Unjust Enrichment Claim Must Fail Because Plaintiffs Have Not Alleged Sufficient Facts to Show that Procter & Gamble <u>Was Unjustly Enriched at Plaintiffs' Expense</u>

The unjust enrichment claims brought on behalf of class members who were not injured must fail.  "Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." <u>Dema</u>, 678 S.E.2d at 434, 383 S.C. at 123.  Plaintiff must not only prove that Procter & Gamble has been unjustly enriched, but that Plaintiff has suffered a loss that is linked to Procter & Gamble's unjust

enrichment.  Moreover, even if Procter & Gamble has been unjustly enriched (and it has not

been), if Plaintiff has no injury, then Plaintiff has no claim.  Id. (affirming dismissal of

Appellants' unjust enrichment claim, where appellant suffered no injury as a result of defendant's

conduct).  Furthermore, where Procter & Gamble has conferred a benefit on Plaintiffs in

exchange for payment, there is no unjust enrichment.  Marley v. Univ. of S.C., No. 3:08-937,

2010 U.S. Dist. LEXIS 102013, at *57-58 (D.S.C. Aug. 20, 2010) (dismissing plaintiff's unjust

enrichment claim where the benefit conferred on defendant was not non-gratuitous); Nelson

Mullins Riley & Scarborough v. Aon Risk Servs. of N. Y., No. 4:04-cv-21962, at *14-15, 2007

U.S. Dist. LEXIS 98126 (D.S.C. July 18, 2007) (dismissing plaintiffs unjust enrichment claim

where the defendant provided something in exchange for payment).

   In the present action, Plaintiffs have not clearly alleged that they ever actually

conferred a benefit on Procter & Gamble.  Plaintiffs do not clearly assert that they brought the

allegedly defective Pampers with Dry Max or that they paid money directly to Procter &

Gamble.  Notwithstanding and in addition to this failure, to the extent that Procter & Gamble

received a benefit from Plaintiffs, the benefit that Procter & Gamble would have received can

hardly be unjust.  Plaintiffs received diapers and used them for several weeks.  Plaintiffs never

allege that the diapers failed to serve the purpose of containing their child's excrement.  Plaintiffs

received a benefit in exchange for any money that they may have paid for the product.

    6. All Claims Brought on Behalf of Non-South Carolina Residents
     Fail Because Plaintiffs Do Not Have Standing to Bring Class
     Claims Under the Laws of Other States

   Finally, to the extent that Plaintiffs are bringing claims on behalf of a nationwide

class, Plaintiffs do not have standing to bring class action claims on behalf of individuals who

are not residents of South Carolina or possibly Ohio.[20]  A class action plaintiff must have individual standing to bring the claims that he or she asserts on behalf of a class.  Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998) ("[I]ndividual standing is a prerequisite for all actions, including class actions.").  Plaintiffs have not alleged any connections between their claims and any state other than South Carolina and Ohio.  Because, Plaintiffs' claims have no connection to any states other than South Carolina and Ohio, Plaintiffs do not have individual standing to bring claims under the laws of states other than South Carolina and Ohio.  Smith v. Lawyers Title Ins. Corp., No. 07-12124, 2009 U.S. Dist. LEXIS 16140, at *7-8 (E.D. Mich. Mar. 2, 2009).  As a result, Plaintiffs cannot assert class action claims under any other states laws.  Thus, the claims of all class members who are not South Carolina residents should be dismissed.

IV.         CONCLUSION

         For the foregoing reasons, this Court should stay this matter until a decision is reached by the Southern District of Ohio on the virtually identical pending Dry Max Motion to Dismiss.  In the alternative, this Court should dismiss each of Plaintiffs' claims.

---

[20] Procter & Gamble is not conceding that Plaintiffs have standing to bring claims under either Ohio or South Carolina laws or both states laws.  Rather, Procter & Gamble is asserting that South Carolina and Ohio are the only states that Plaintiffs link to their claims.  Complaint, ¶¶ 9-12.  Further, the attached Dry Max Motion to Dismiss demonstrates that, even if Ohio law were to apply to Plaintiffs' claims, Plaintiffs' claims would be subject to dismissal.

Respectfully submitted,

OF COUNSEL

D. Jeffrey Ireland (Ohio Bar No. 0010443)
Brian D. Wright (Ohio Bar No. 0075359)
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone:  (513) 632-0310
Telecopier:  (513) 632-0319
Email:  djireland@ficlaw.com

s/William H. Latham
Robert W. Foster, Jr.
William H. Latham
NELSON MULLINS RILEY &
SCARBOROUGH
1320 Main Street
Columbia, SC  29201
Telephone:  (803) 255-9414
Telecopier:  (803) 255-5187
Email:  robbie.foster@nelsonmullins.com

Attorneys for Defendants
The Procter & Gamble Company;
The Procter & Gamble Paper Products
Company and The Procter & Gamble
Distributing LLC

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 30th day of October, 2010, I electronically filed the foregoing

Memorandum in Support of Motion of Defendants The Procter & Gamble Company, The Procter

& Gamble Paper Products Company and The Procter & Gamble Distributing LLC to Stay This

Case Or, in the Alternative, to Dismiss the Class Action Complaint with the Clerk of Courts

using the CM/ECF system, which will send notification of such filing to CM/ECF participants:

J. Edward Bell, III
J. Ryan Heiskell
BELL LEGAL GROUP, LLC
232 King Street
Post Office Box 2590
Georgetown, SC 29442

Attorneys for Plaintiffs

<u>s/William H. Latham</u>
William H. Latham